In the Matter of the Estate of WILLIAM TROFEMUK, Deceased.

Surrogate's Court, Nassau County, October 21 and December 6, 1966.

*Phillips, Nizer, Benjamin, Krim & Ballon (Theodore H. Friedman* of counsel), for petitioner. *Anthony N. Del Rosso,* special guardian for William Trofemuk, infant.

John D. Bennett, S. In this proceeding to compromise causes of action for wrongful death and personal injuries, the parties seek directions from the court as to the distribution of a recovery of $182,717.59 which includes interest to May 9, 1966 from one set of defendants and an additional $10,000 recovered from two other defendants. The net proceeds of the recovery and settlement allocated to the decedent's cause of action for personal injury are assets of the estate and are to be distributed in accordance with section 83 of the Decedent Estate Law, after allowance made therefrom of the widow's exemption (Surrogate's Ct. Act, § 200). The allocation of various costs, disbursements and attorneys' fees to the proceeds of the recovery for conscious pain and suffering and the amounts thereof are approved.

Where an estate has sufficient assets to pay claims, hospital and funeral bills are payable out of the general estate (*Matter of Weinstein,* 149 Misc. 907). Accordingly, the lien of the County of Nassau for medical, hospital and partial payment of the funeral bill is directed to be paid from the personal injury recovery. Repayment of the lien of the County of Nassau for compensation benefits to the widow and children should be paid

from the respective shares of the widow and children in the exact amounts actually received by each of them.

In distributing the recovery for wrongful death, petitioner proposes that the normal formula employed in *Matter of Kaiser* (198 Misc. 582)' be departed from, and the court substantially reduce the widow's share in consideration of the fact that she did not survive the final affirmance of the recovery herein by the Court of Appeals on March 24, 1966 (*Trofemuk* v. *Benowitz,* 17 N Y 2d 650), having died on September 7, 1965. In addition, the petitioner urges that the court should consider the wishes of the two children and in particular the son who is an infant who has evinced a desire that he share equally in the balance with his sister who is now an adult. While the court is of the opinion that consideration should be given to the fact of the widow's death and her share reduced to that amount proposed in the papers, it is of the opinion that the infant son and daughter should nevertheless share in the balance in proportion to the respective number of years of their minorities at the time of the accident, and so holds (*Matter of Kaiser, supra*). While the desire on the part of the infant son to share the balance of the proceeds equally with his sister may be commendable, no weight can be given to a waiver or consent on the part of an infant. In addition, subsequent to his father's death, the infant son sustained serious brain damage as the result of an accident. The so-called compromise obtained by the special guardian employing a formula distributing the balance equally between the two children but granting the son an additional $10,000 in view of his disability, is apparently premised on the binding effect of his waiver and consent. The allocation of various costs, disbursements and attorneys' fees and the amounts thereof are approved. The special guardian's fee is fixed in the amount of $1,000.

### (Reargument)

In this proceeding to compromise causes of action for wrongful death and personal injuries, the court has heard the reargument of its decision dated October 21, 1966 and an affidavit has been filed requesting a reconsideration of the decision insofar as it allocated part of the net proceeds of the wrongful death recovery to the two surviving children, one of whom is the petitioner and the other is a minor son.

In her application of compromise, the petitioner requested that the share of her mother, the surviving widow, be substantially decreased in consideration of the fact that she did not sur-

vive the final affirmance by the Court of Appeals of a verdict in favor of the decedent's estate. She also requested that the balance of the proceeds attributable to the wrongful death recovery be distributed equally between her and her brother, notwithstanding the fact that she was 18 years of age at the time of the accident and her brother only 13 years of age.

In this application, which will be considered one to reargue although no formal motion has been made, the petitioner emphasizes that the distribution directed by the court will result in approximately a difference of $50,000 between the share of petitioner and the minor son and that this difference is magnified by the fact that the widow's share has been substantially decreased from approximately 75% to 10%.

While it is true that if the court had not diminished the share of the now deceased widow, the petitioner would eventually receive a greater sum than that provided under the decision by reason of her one-half interest in her mother's estate, the petitioner overlooks the fact that it was she who urged the court to substantially decrease the deceased widow's share and filed an extensive brief in support thereof with numerous citations, including *Matter of Reynolds* (115 N. Y. S. 2d 534). There, as here, a reduction in the normal share of the deceased widow was made by the court and, also as here, the balance was directed to be distributed in accordance with *Matter of Kaiser* (198 Misc. 582). The petitioner cannot now argue that if she had insisted on her deceased mother's estate receiving her entire normal share of 75% she would have received a greater total sum than under the result which she herself originally urged and even presently urges (21 N. Y. Jur., Estoppel, § 55).

The special guardian on the argument stressed the fact of the infant's disabilities which were incurred as the result of an accident he sustained reportedly on March 29, 1965, almost four years after his father's death. Medical reports of a Dr. Jack London attached to the special guardian's final report delineate the serious nature of. the injuries sustained by the infant. In one part, the doctor states that " if the degeneration of the brain persists * * * ' bypass ' operation, to connect the ventricles to the heart, must be performed, to prevent further brain atrophy." In a prior paragraph, he concludes with the following: " The ultimate prognosis is extremely poor. He will require close observation." The petitioner in the affidavit for a reconsideration and in oral argument has attempted to significantly minimize her brother's condition by stressing solely the dollar value of proposed medical fees, including that of the

operation which may be needed in the future, without taking into consideration other financial losses that can result from a serious disability.

On page 10 of the affidavit for a reconsideration, the attorney for the petitioner acknowledges that the injuries sustained in the accident were a serious matter but, nevertheless, concludes that "he is not by any means a disabled or incompetent person. Were he so, we would be the first to urge protection of his interests". On the reargument petitioner conceded that the court could take into consideration the medical reports attached to the special guardian's report, and later, in chambers, stated that they would rest upon such documents without the introduction of any further proof with regard to the infant's disability. In view of the petitioner's concession as to the validity of the medical reports and her statement that she is content to offer no further proof, it is difficult to understand the above statement in her affidavit that her brother is not disabled.

On the other hand, the special guardian on reargument did request that a hearing on the infant's disability be held to further emphasize the infant son's medical condition. However, as has been held, the extent to which disability increases pecuniary injury is capable of little more than a rough approximation (*Matter of De Martino,* 142 Misc. 785). The court is of the opinion that a hearing on the question of disability would serve no useful purpose since a following of the normal *Kaiser* formula has already resulted in a difference of approximately $50,000 between the petitioner and the infant son.

While the court has hesitated to give any consideration per se to the infant's disability which occurred a number of years after his father's death, since it may be argued that distribution should be made upon facts existing at the decedent's death, nevertheless an adherence to the normal *Kaiser* formula does result in a substantially larger amount for the infant son. In the context in which the court reviews this problem and under all the circumstances, it cannot be said that this almost $50,000 differential is so excessive so as to be unwarranted under any aspect of this case. Accordingly the motion for reargument is granted and upon reargument, the original decision is adhered to.